**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| STACO ELECTRIC CONSTRUCTION CO. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SHAW ELECTRIC CO., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:20-cv-00165-DGK |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PHILLIP YELDER, in his capacity as | ) | |
| Acting Human Relations Dept. Director, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS

This case arises from Plaintiffs Staco Electric Construction Co.'s and Shaw Electric Co.'s challenge to the City of Kansas City's ("City") Minority Business Enterprise/Woman Owned Business Enterprise ("MBE/WBE") program, which gives special consideration to minority-owned and woman-owned businesses in awarding City contracts. Plaintiffs, who do not qualify for the program, bring this two-count suit under 42 U.S.C. § 1983 against the City and Defendant Yelder in his official capacity as the City's Acting Director of Humans Relations. Plaintiffs allege that the MBE/WBE program and Defendants' enforcement thereof violates the Fourteenth Amendment.

Now before the Court is Defendants' motion for judgment on the pleadings. ECF No. 21. For the reasons stated below, this motion is GRANTED IN PART.

## Standard

After the pleadings have closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). In ruling on a motion for judgment on the pleadings, the court must "accept as true all factual allegations set out in the complaint and construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [plaintiff's] favor." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks and citations omitted).

A motion under 12(c) that challenges the sufficiency of the pleadings requires the Court to apply the 12(b)(6) standards. *Id*. To survive a 12(b)(6) motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). It must include "enough facts to state a claim to relief that is plausible on its face*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint . . . does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 (internal citations omitted)). Much like the court's review under Rule 12(b)(6), "[j]udgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Ashley Cnty., Ark..*, 552 F.3d at 665 (internal quotation marks and citation omitted).

To decide a 12(c) motion "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citations omitted). Matters necessarily embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders,

2

items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). The Court may therefore consider Kansas City Ordinances and the current Kansas City Code of General Ordinances in deciding this motion. *See id.*

## Background

Construing the Complaint in the light most favorable to the Plaintiffs for purposes of resolving the pending motion, the Court finds the facts to be as follows. Since 1996, the City has operated the "Minority and Women's Business Enterprise Program of Kansas City, Missouri," an affirmative action program which gives minority-owned and woman-owned businesses special consideration in the awarding of City projects. Compl. ¶ 7, ECF No. 1; Kansas City, Mo. Ordinance 960063 (Mar. 7, 1996) (currently codified at Kansas City, Mo. Code of General Ordinances ch. 3, art. IV, § 3-421–3-500 (2020)). Projects for which minority-owned and woman-owned businesses may receive special consideration include projects funded by Kansas City's tax increment financing program and redevelopment projects as defined by RSMO § 353.010.[1] Kansas City, Mo. Code of General Ordinances ch. 3, art. IV, § 3-425 (2020). In order to be given special consideration, any minority-owned or woman-owned business must meet the City Code of Ordinances' definition of either a Minority Business Enterprise ("MBE") or Women's business enterprise ("WBE"). *Id.* at § 3-421(a)(34), (47). The Human Relations Department is responsible for certifying whether a business meets the definition of an MBE or WBE. *Id.* at § 3-461.

Prior to 2018, the City Code of Ordinances defined MBEs as any "for-profit small business

---

[1] The complaint does not explain either of these types of projects, though it does cite the provision in the City Code of Ordinances which grants MBEs/WBEs special consideration in the awarding of these contracts. Compl. ¶ 22.

concern" that

     a.  Is at least 51 percent owned, managed, and independently controlled by one or more *minorities*; and

     b.  Has a real and substantial presence in the Kansas City Metropolitan Area as defined by section 3-461(c); and

     c.  Meets the business size standards imposed by 13 C.F.R. § 121.201 and as subsequently amended and this division; and

     d.  Performs a commercially useful function; and

     e.  Is certified by the human relations department.

Kansas City, Mo. Ordinance 130041 at § 3-421(a)(29) (March 21, 2013) (emphasis added). Prior to 2018, the City Code of Ordinances similarly defined WBEs as any "for-profit small business concern" that

     a.  Is at least 51 percent owned, managed, and independently controlled by one or more *women*; and

     b.  Has a real and substantial presence in the Kansas City Metropolitan Area as defined by section 3-461(c); and

     c.  Meets the business size standards imposed by 13 C.F.R. § 121.201 and as subsequently amended and this division; and

     d.  Performs a commercially useful function; and

     e.  Is certified by the human relations department . . .

*Id.* at § 3-421(a)(40) (emphasis added).

The program grants MBEs/WBEs special consideration by requiring each city department and "incentive agency"[2] to submit an "MBE/WBE utilization plan" for each fiscal year to the Director of Human Relations. Kansas City, Mo. Code of General Ordinances ch. 3, art. IV, § 3-429 (2020). MBE/WBE utilization plans are required to include a yearly goal for participation by "qualified MBEs and WBEs as prime contractors and subcontractors" "expressed as a percentage of the city department or incentive agency's total fiscal year contract expenditures." *Id.* Departments and incentive agencies are also required to "use good faith efforts to encourage and attempt to obtain participation of qualified MBEs and/or WBEs and shape the scope,

---

[2]An incentive agency is, broadly, "an entity with the authority to recommend to the city tax increment financing or tax abatement." Kansas City, Mo. Code of General Ordinances ch. 3, art. IV, § 3-421 (25) (2020).

specifications, and size of a contract to enhance such participation." *Id.* Though each department and incentive agency may set its own specific participation goals, the City maintains a yearly city-wide goal that MBEs will participate in 14.7 percent of all City contracts and WBEs will participate in 14.4 percent of all City contracts. *Id.* at § 3-427.

Plaintiffs are two businesses which "regularly submit electrical construction bids on projects for which City of Kansas City Tax Increment Financing or Chapter 353 Redevelopment credits are involved," and they expect to continue bidding on these projects in the future. Compl. ¶¶ 28, 29. Plaintiffs do not qualify as an MBE/WBE, and thus are not eligible for the special consideration offered by the program. *See* Compl. ¶¶ 36-37, 43-44.

## I.     The Personal Net Worth Limitation

On or before August 27, 1998, the City undertook a study of the MBE/WBE program ("first disparity study"). Compl. ¶ 8; Kansas City, Mo. Ordinance 970828 (Aug. 27, 1998). The City was concerned with whether minority-owned and woman-owned businesses still faced discrimination in the awarding of city contracts, and with whether the MBE/WBE program met the Fourteenth Amendment's Equal Protection standards as articulated in *Croson v. City of Richmond*, 488 U.S. 469 (1989). Compl. ¶ 10-11; Kansas City, Mo. Ordinance 970828 (Aug. 27, 1998). The first disparity study concluded that minority-owned and woman-owned businesses "received significantly fewer contracts and contract dollars than would be expected given their availability in the geographic market from which the City procures construction, professional services, other services, and goods" and that "the principle cause for this [was] racial, ethnic, and gender discrimination." *Id.* The first disparity study also concluded that "race, ethnic, and gender-neutral initiatives to increase the participation of [minority-owned and woman-owned businesses] in the City contracting process [had] borne few results." Compl. ¶ 12; Kansas City, Mo. Ordinance 970828 (Aug. 27, 1998). The study also recommended that "race and gender-conscious remedies

5

should be carefully tailored, time limited and fashioned in a manner that is clearly within the constitutional limitations outlined in *Croson*." Compl. ¶ 13.

As a result of the first disparity study, the City decided to continue its affirmative action MBE/WBE program in order to "remedy the on-going impact of discrimination against MBEs/WBEs seeking to participate in the City s procurement process." Compl. ¶ 12; Kansas City, Mo. Ordinance 970828 (Aug. 27, 1998).

Multiple subsequent disparity studies have also concluded that the MBE/WBE program continues to serve the compelling interest of remedying the ongoing impact of discrimination against minority-owned and woman-owned businesses in the awarding of City projects. Compl. ¶ 14. The City conducted its most recent disparity study in 2016 ("2016 Disparity Study"). Compl. ¶ 21. This study concluded that "a compelling interest still exists to continue the City's administration of the Affirmative Action Program based on race, ethnicity, and gender, to remedy the ongoing impact of discrimination against MBE/WBEs seeking to participate in the city's procurement process." *Id.* In order to ensure the MBE/WBE program is narrowly tailored to the goal of preventing ongoing discrimination, the 2016 Disparity Study also recommended minority-owned and woman-owned business be ineligible for certification as an MBE/WBE if any individual owner's personal net worth exceeds a specified amount. *Id.*

In 2018, the City Council passed Ordinance 180535, which adopted the 2016 study's recommendations. Kansas City, Mo. Ordinance 180535 (Oct. 25, 2018). This ordinance added a personal net worth requirement which had not been included in any prior MBE/WBE provisions. *See id.* Under this additional requirement, a business only meets the definition of an MBE/WBE if:

> f. The owner's or, for businesses with multiple owners, each individual owner's personal net worth is equal to or less than the permissible personal net worth

6

amount determined by the U.S. Department of Transportation to be applicable to
its DBE program.

*Id.* at § 3-421(a)(34), (47).

The ordinance set the personal net worth requirement to take effect on October 1, 2019.
*Id.*  However, the text of Ordinance 180535 only required owners of businesses applying to be
certified as an MBE/WBE to prove their financial status.  *Id.* at § 3-461 ("Each entity *seeking*
certification . . . must demonstrate by written documentation or affidavit that its owner or
individual owner's personal net worth . . . is equal to or less than the permissible personal net
worth amount determined by the U.S Department of Transportation to be applicable to its DBE
programs.") (emphasis added).  It did not require owners of businesses already certified as
MBE/WBE to provide proof of their financial status.  *Id.*

Defendants nonetheless understood Ordinance 180535 to require owners of previously
certified MBE/WBE businesses to provide documentation of their net worth.  On October 2, 2019,
one day after the personal net worth limitation took effect, Defendant Yelder told the City
Council's Transportation, Infrastructure, and Operations Committee that thirty to forty businesses
would be "affected" by the personal net worth limitation.  Compl. ¶ 24.  Defendant Yelder also
stated that MBE/WBE owners needed additional time to transfer money from their personal
accounts to their businesses in order to avoid disqualification under the personal net worth
requirement.  *Id.*  Defendants did not enforce the personal net worth limitation when it was
scheduled to take effect on October 1, 2019.  Compl. ¶¶ 25-26.  On February 2, 2020, the City
Council voted to delay imposing the personal net worth requirement until October 1, 2020.  Compl.
¶ 27; Kansas City, Mo. Ordinance 190807 (Feb. 6, 2020).

On June 16, 2020, the City Council passed Ordinance 200428.  This ordinance required
owners of businesses which were already certified under the MBE/WBE program to submit

7

documentation of their financial status before August 1, 2020.  Kansas City, Mo. Ordinance 200428 (Jun. 16, 2020).

## II.    The Business Size Limitation

13 C.F.R. § 121.201 is a federal regulation relating to all Small Business Association programs.  The regulation categorizes businesses by the industry in which they are engaged.  13 C.F.R. § 121.201 (2019).  In order to be considered "small," businesses must not exceed the business size standards, expressed either in annual receipts or number of employees, provided by 13 CFR § 121.201 for their applicable industry.[3]  *Id.*

As noted above, under the text of the MBE/WBE program provisions, businesses are ineligible for certification as an MBE/WBE if they exceed the applicable size standards under 13 C.F.R. § 121.201.  Kansas City, Mo. Code of General Ordinances ch. 3, art. IV, § 3-421(a)(34), (47) (2020).  The Director of Human Relations, in determining whether a business meets the size requirement for certification as an MBE/WBE, is required to apply the "current SBA business size standard(s) found in 13 C.F.R. part 121.201 . . . appropriate to the type of work the firm seeks to perform."  *Id.* at § 3-461(k).

Defendants have interpreted and applied the revenue limits to allow businesses who exceed the applicable business size standards to maintain or obtain certification as an MBE/WBE.  Compl. ¶¶ 16-19.  On one occasion, which was subsequently litigated in federal court, the then Acting Director of Human Relations certified an electrical contracting business as a WBE even though its annual receipts exceeded $12 million, the size limitation applicable to electrical contracting businesses at the time.  Compl. ¶ 16 (citing *Elec. Corp. of Am. v. Kansas City*, No. 04-0718-CV-W-HFS, 2005 WL 1252256, at *1, 3 (W.D. Mo. May 24, 2005)).  He classified the business as a

---

[3] Each industry is identified by North American Industry Classification System (NAICS) code.  13 C.F.R. § 121.201 (2019).

"general contractor," a designation with a size standard of $28.5 million in annual receipts, in order to avoid the size limitation and keep growing enterprises qualified in the MBE/WBE program. *Elec. Corp. of Am.,* 2005 WL 1252256, at *3.  The court held this classification violated state law and ordered the City and the Acting Director to re-classify the business as an electrical contractor. *Id.* at *2–4.  However, rather than re-classify the business as an electrical contractor for purposes of certification as a WBE, "the City recertified the business under a variety of component NAICS classifications" which contained higher revenue limits.  Compl. ¶ 18.

At some point prior to January 2016, the City certified a number of construction contracting businesses as MBEs/WBEs even though they did not meet the applicable business size requirement.  Compl. ¶ 20.  The city instead classified the construction contracting businesses as manufacturers based on prefabrication work performed off of construction sites.[4]  *Id.*  As Acting Director of Human Relations, Defendant Yelder has continued to liberally interpret and apply the business size standards of 13 C.F.R. § 121.201, thereby allowing businesses who exceed the applicable business size standards to maintain or obtain certification as an MBE/WBE.  Compl. ¶ 19.

### Procedural History

Plaintiffs filed this lawsuit on March 4, 2020, before the City Council passed Ordinance 200428 and before October 1, 2020, when Ordinance 190807 scheduled the personal net worth limitation to again take effect.  The complaint challenges the MBE/WBE Program and Defendants'

---

[4] The complaint does not state the business size standards applicable at the time.  The Court notes that currently, a general construction contracting business (NAICS codes 236115–236220 and 237110–237990) is considered "small" if its annual receipts do not exceed $30–$39.5 million, depending on the specific type of construction in which the business engages.  13 C.F.R. § 121.201 (2019).  However, a prefabricated metal building and component manufacturing business (NAICS Code 332312) is considered "small" if it has fewer than 750 employees.  *Id.*  Thus, based on current standards, a general construction contracting business classified as a prefabricated metal building and component manufacturing business could be certified as an MBE/WBE regardless of its yearly receipts, so long as it has fewer than 750 employees.

9

enforcement of the program as violating the Fourteenth Amendment. However, the Complaint is not a model of clarity. It is organized in two "counts," but each count serves merely to group several claims into one of two broad categories. Count One involves all of Plaintiffs' claims regarding the personal wealth limitation for inclusion in the MBE/WBE program. Count Two involves a single claim regarding Defendant's enforcement of the MBE/WBE program's business size requirements.

Count One seeks multiple declaratory judgments. As best the Court can tell, Plaintiffs seek a declaration that the entire MBE/WBE program unconstitutional and void because the net worth limitation "is over-inclusive and not sufficiently narrowly tailored to remedy past discrimination," as well as a declaration that the MBE/WBE program is unconstitutional and void "with respect to all businesses previously certified as MBE/WBE businesses." *Compare* Compl. ¶¶ 32, 38(b), *with* Compl. ¶ 38(a). Plaintiffs claim this relief is necessary because the program provisions did not include a personal net worth limitation prior to October 1, 2020.[5] Compl. ¶ 32.

Count One also argues that the MBE/WBE program is unconstitutional because, now that the personal net worth limitation has taken effect under Ordinance 190807, business owners may still "avoid decertification by transferring personal assets into and out of protected asset categories in order to meet the limitation so that their business can remain certified." Compl. ¶ 34.

Count One additionally challenges Defendants' enforcement of the personal net worth limitation while it was in effect under the text of the MBE/WBE provisions from October 1, 2019, to February 6, 2020. Plaintiffs argue that multiple MBE/WBE businesses whose owners failed to meet the personal net worth limitation during this time were not removed from the program, and that Defendants' failure to enforce the personal net worth limitation against these businesses was

---

[5] At the time Plaintiffs filed the Complaint, the personal net worth limitation had not taken effect, but the City Council had passed Ordinance 190807 which scheduled the net worth limitation to take effect on October 1, 2020.

unconstitutional. Compl. ¶ 38(d). Plaintiffs seek a judgment declaring Defendant's failure to remove these businesses unconstitutional, *id.*, and an order enjoining defendants from exercising discretion in enforcing the personal net worth limitation "insofar as [the MBE/WBE program] purports to confer such rights, powers and duties on the Defendants." Compl. ¶ 38(e).

Count Two seeks a declaratory judgment that Defendants' failure to enforce and/or misapplication of the business size standards is unconstitutional, and an order enjoining Defendants from continuing this practice.[6] Compl. ¶ 45 (A), (B). Count Two argues this practice is unconstitutional because businesses that exceed the size limitation for their applicable industry are certified as MBEs/WBEs despite not demonstrating disadvantage. Compl. ¶¶ 40, 41.

Defendants filed this motion for judgment on the pleadings on August 10, 2020, before the personal net worth limitation took effect again under Ordinance 190807, but after Ordinance 200428 required owners of businesses certified as MBE/WBE to submit documentation of their financial status.

## Discussion

Defendants argue the claim in Count One that the MBE/WBE program is unconstitutional because the program provisions do not include a personal net worth limitation is moot, and also argue that Plaintiffs failed to adequately plead the remaining claims in Count One. Defendants also contend Plaintiffs failed to adequately plead an injury-in-fact for their single claim under Count Two. The Court discusses each argument below.

---

[6] The Complaint is structured such that Plaintiff's main claim is that Defendants' "erroneous application of the size standards imposed by the ordinance" is unconstitutional. Compl. ¶ 40. In the alternative, Plaintiffs' claim that "defendants are not applying the appropriate SBA business size standards found in 13 C.F.R. § 121.201." Compl. ¶ 41. The size standards imposed by the ordinance are the size standards of 13 C.F.R. § 121.201. *See supra*, Background, Pt. II. The Court therefore holds that these are the same claim.

11

I.     **Plaintiffs' Count One claim that the MBE/WBE program is unconstitutional because the program provisions do not contain a personal net worth limitation is moot.**

"The exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy." *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) (quoting *Pressier v. Newkirk*, 422 U.S. 395, 401 (1975)). An actual controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Id.* If, after a plaintiff files a complaint, a change in circumstances provides the plaintiff with the requested relief, an actual controversy no longer exists, and the Court must dismiss the claim as moot. *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013). Because mootness is a jurisdictional issue, the Court may consider whether changed circumstances moot a claim even if the parties have not raised the specific issue. *Ringo*, 677 F.3d at 796.

The Court holds this claim is mooted, albeit for a different reason than that proffered by Defendants. Defendants argue Ordinance 200428 moots Plaintiff's claim for a declaratory judgment that the MBE/WBE program is unconstitutional because the program provisions do not include personal net worth requirement. However, Ordinance 200428 did not implement a personal net worth limitation. Rather, it only required owners of businesses previously certified under the MBE/WBE program to provide documentation of their personal net worth prior to August 1, 2020. Ordinance 200428 therefore does not moot Plaintiff's claim that the lack of a personal net worth requirement in the text of the provisions makes the MBE/WBE program unconstitutional.[7] But that is not the end of the analysis. The City Council initially ordered a personal net worth limitation to go into effect on October 1, 2019. Ordinance 190807 postponed

---

[7] However, to the degree Count One includes a claim for a declaratory judgment that the MBE/WBE program is unconstitutional because businesses certified before the personal net worth limitation took effect were not required to show disadvantage—it is difficult to tell from the pleadings—the Court holds such a claim is mooted by Ordinance 200428.

implementation of this limitation until October 1, 2020, and it is now in effect. Because the personal net worth limitation is now in effect, Plaintiff's claim that the MBE/WBE program is unconstitutional due to the lack of a personal net worth limitation is now moot.

Plaintiffs' argument that this claim is saved by the voluntary cessation exception to the mootness doctrine is unavailing because this exception does not apply here. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," unless "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 298 n.10 (1982) (internal quotation omitted). This exception prevents a defendant from avoiding judicial review by ceasing a challenged activity and then beginning the activity again after dismissal. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). However, legislative changes "that discontinue a challenged practice are usually enough to render a case moot, even if the [city council] possesses the power to reenact the [ordinance] after the lawsuit is dismissed." *Teague*, 720 F.3d at 977 (quoting *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir.2000)). Exceptions to the principle that legislative changes moot a claim involve situations where it is "virtually certain" that the amendment will be repealed, and the challenged practice will begin again. *Moore v. Thurston*, 928 F.3d 753, 757 (8th Cir. 2019); *Teague*, 720 F.3d at 977.

As of the date of this order, the MBE/WBE program at issue here includes a personal net worth limitation. Nothing in the record suggests the City Council will repeal this requirement. Since there is no indication, much less a virtually certainty, that this allegedly wrongful behavior will reoccur, the voluntary cessation exception does not apply here, and this claim is dismissed as moot. Plaintiffs' claim for attorneys' fees required to obtain a declaratory judgment on this basis

is also dismissed because under the circumstances they are not considered "prevailing parties" under § 1983. *See Libertarian Party of Ark. v. Martin*, 876 F.3d 948, 952 (8th Cir. 2017) ("When a case has been rendered moot, a prevailing party is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties *prior* to the intervening act of mootness") (citations omitted).

## II. Plaintiffs have sufficiently plead their remaining claims under Count One.

Defendants argue that Plaintiffs have not sufficiently pled facts that the failure to enforce the personal net worth requirement between October 1, 2019, and February 6, 2020, was unconstitutional, or that the MBE/WBE program is unconstitutional because businesses may transfer assets into protected asset categories. Additionally, Defendants argue Plaintiffs have not pled standing for either claim.

The Court holds that, for both claims, Plaintiffs have sufficiently pled facts stating a plausible claim for relief and have sufficiently pled standing. Judgment on the pleadings is therefore not appropriate.

### a. Plaintiffs have sufficiently plead facts for both claims.

The claims grouped under Count One all assert that the MBE/WBE program is not narrowly tailored to remedy past discrimination as required by the Fourteenth Amendment. In order to sufficiently plead such a claim, a plaintiff must state facts which, if taken as true, show that businesses which do not suffer from the effects of past discrimination currently receive, or have received, special consideration under the MBE/WBE program. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989). *See also Twombly*, 550 U.S. at 570.

### 1. Plaintiffs pled facts sufficient to state a plausible claim that Defendants' failure to enforce the personal net worth requirement between October 1, 2019 and January 6, 2020 was unconstitutional.

With respect to the claim that Defendants' failure to enforce the personal net worth

requirement when it was in effect between October 1, 2019, and January 6, 2020, was unconstitutional, the Complaint alleges that the 2016 disparity study indicated that the MBE/WBE program required a personal net worth limitation in order be narrowly tailored to remedy the effects of past discrimination. It also alleges that Defendants did not enforce the personal net worth requirement when it went into effect on October 1, 2019, and that, on October 2, 2019, Defendant Yelder told the City Council's Transportation Infrastructure and Operations Committee "that MBE/WBE owners needed additional time to transfer money to their businesses." The Complaint also alleges that Defendant Yelder believed that thirty to forty businesses would be affected by the personal net worth limitations.

Drawing all reasonable inferences in Plaintiffs' favor as the Court is required to do, the Court reads the Complaint as alleging that thirty to forty businesses certified under the MBE/WBE program had owners who could not meet the personal net worth test and did not suffer from the effects of past discrimination. It also alleges that since Defendants elected to not enforce the personal net worth limitation against these businesses, these businesses received special consideration under the MBE/WBE program despite not suffering from the effects of past discrimination. This is sufficient to state a plausible claim.

> 2. **Plaintiffs pled facts sufficient to state a plausible claim that the MBE/WBE program is unconstitutional because business owners can avoid the personal net worth requirement.**

The Court reaches the same conclusion with respect to Plaintiffs' claim that the MBE/WBE program is currently unconstitutional because, under the text of the program provisions, business owners may avoid the personal net worth requirement by transferring money into protected asset categories. The Complaint alleges that on October 2, 2019, Defendant Yelder told the City Council's Transportation Infrastructure and Operations Committee that thirty to forty businesses

15

would be "affected" by the personal net worth requirement and "that MBE/WBE owners needed additional time to transfer money to their businesses." It also alleges that Defendants decided not to enforce the personal net worth requirement when it first went into effect, and ultimately the City Council postponed the personal net worth requirement an additional year.

It is reasonable to infer from these allegations that Defendants made these decisions because they wanted these businesses to remain certified even though they did not suffer from the effects of past discrimination. Defendant Yelder's statement also indicates that he believed the text of the MBE/WBE program provisions allowed business owners to maintain certification by transferring assets to their businesses. Additionally, the text of the personal net worth limitation has not changed, indicating that business owners are still able to maintain or obtain certification by transferring assets to their businesses. Plaintiffs' complaint therefore states facts sufficient to show that businesses which do not suffer from the effects of past discrimination currently receive special consideration under the MBE/WBE program because business owners may transfer their assets to avoid the personal net worth limitation.

  **b.**  **Plaintiffs have sufficiently plead standing for both claims.**

Defendants argue that Plaintiff s have not sufficiently pled an injury-in-fact or causation for either of their remaining claims under Count One, and therefore they lack standing. This argument is unpersuasive.

Plaintiffs must have standing in order to invoke the Court's jurisdiction to decide this matter. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992). Plaintiffs have standing only if they establish 1) an "injury-in-fact," 2) "a causal connection between the injury and the conduct complained of," and 3) that the Court is likely able to redress Plaintiffs' injury. [8] *Id.* at 560–61. A

---

[8] Defendants do not dispute that Plaintiffs' alleged injuries can be redressed through the requested declaratory judgments.

plaintiff must establish each element of standing to "the manner and degree of evidence required" at each successive stage of the litigation. *Id*. at 561. General factual allegations of the elements of standing therefore suffice to establish standing at the pleading stage, as the Court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

In order to establish an injury-in-fact at the pleading stage, Plaintiffs must plead facts showing a "concrete and particularized" "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. Because Plaintiffs seek declaratory relief, they must also establish that the invasion will be "imminent, not conjectural or hypothetical." *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (internal quotation omitted).

To establish a concrete and particularized invasion of a legally protected interest, Plaintiffs need only plead that they are "able and ready to bid on contracts and that a discriminatory policy prevents [them] from doing so on an equal basis." *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). In *Northeastern Florida*, an association of contractors sought a declaratory judgment that the City of Jacksonville's "Minority Business Enterprise Program" violated the Equal Protection Clause. *Id.* at 659. The program set aside certain projects to be bid on exclusively by minority-owned businesses. *Id.* at 658. The association did not allege that any of its members, who were not minority owned, would have received contracts if they had been allowed to bid. *Id.* at 660. The Supreme Court held that the association's allegations that its members "regularly bid on construction contracts in Jacksonville, and that they would have bid on contracts set aside pursuant to the city's ordinance were they so able," were sufficient to establish a concrete and particularized injury at the pleading stage. 508 U.S. at 668–69.

When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Id.* at 666.

To establish that the invasion is imminent, Plaintiffs must plead facts showing that their alleged injury is "certainly impending." *Lujan*, 504 U.S. at 565 n.2. They therefore must plead facts showing that "sometime in the relatively near future" they will bid on another city contract in which MBE/WBE businesses who are wrongly certified will receive special consideration. *See Adarand*, 515 U.S. at 211.

> 1. **Plaintiffs adequately pled standing for their claim that Defendant's failure to enforce the personal net worth limitation between Oct. 1, 2019 and Feb. 6, 2020 was unconstitutional.**

In order to establish injury and causation at this stage of the litigation, Plaintiff's must plead that they will be injured by Defendant's failure to enforce the personal net worth limitation between October 1, 2019 and February 6, 2020. Plaintiffs therefore must allege: (1) Defendants did not remove some businesses from the MBE/WBE program between October 1, 2019, and February 6, 2020, despite their owners exceeding the personal net worth limitation which was in place at the time; (2) Plaintiffs are able and ready to bid on City Contracts, but are currently unable to compete on an equal basis with these businesses due to the special consideration granted by the MBE/WBE program; and (3) Plaintiffs will bid on another city contract in the near future in which these MBE/WBE businesses will receive special consideration.

Plaintiffs have met their burden. It is reasonable to infer—from the fact that the personal net worth limitation was first scheduled to take effect on October 1, 2019, from Defendant Yelder's

October 2, 2019 statement, from the allegation that the City and Defendant Yelder did not implement or enforce the net worth requirement when it first went into effect, and from the fact that, on February 6, 2020, the City Council passed Ordinance 190807 to delay implementing the personal net worth limitation until October 1, 2020—that Defendants did not remove some businesses from the MBE/WBE program between October 1, 2019, and February 6, 2020, despite their owners exceeding the personal net worth limitation in place at the time.

Plaintiffs also allege facts showing they are able and ready to bid on City contracts but are currently unable to compete on an equal basis with these businesses. *See* Compl. ¶ 37 ("Plaintiffs are able and ready to bid on City Contracts for which the City Tax Increment Financing or Chapter 353 Redevelopment credits are involved"); ¶ 9 (alleging that the MBE/WBE program grants special consideration to businesses in the program); ¶ 36 ("Plaintiffs . . . have been deprived of sales that would have resulted from award of the contracts which were instead awarded to . . . MBE/WBE businesses which should have been decertified as of October 1, 2019); *see also* Compl. ¶ 37 (concluding that the MBE/WBE program prevents Plaintiffs from competing for contracts on an equal basis).[9]

Finally, Plaintiffs allege facts showing that, in the near future, they will bid on another City contract in which these allegedly wrongly certified businesses receive special consideration. *See* Compl. ¶ 28 ("Plaintiffs regularly submit electrical construction bids on projects for which City of Kansas City Tax Increment Financing or Chapter 353 Redevelopment credits are involved and Plaintiffs expect to continue to bid on such work."); ¶ 37 ("Plaintiffs are able and ready to bid on

---

[9] The Court does not rely on Plaintiffs' legal conclusion to find plaintiffs have alleged they are unable to compete on an equal basis with businesses in the MBE/WBE program. However, legal conclusions in a complaint may serve to clarify a complaint's factual allegations. *See Iqbal*, 556 U.S. at 679. The Court therefore understands Plaintiffs' factual allegation that they have been deprived of sales because the City has granted contracts to MBEs/WBEs rather than to plaintiffs as a factual allegation showing that plaintiffs are not able to compete on an equal basis.

19

City contracts.").  Plaintiffs have sufficiently alleged an injury caused by Defendant's failure to remove businesses from the MBE/WBE program, and therefore have established standing sufficiently for this stage of the litigation.

> **2.    Plaintiffs adequately pled standing for their claim that the MBE/WBE program is unconstitutional because minority or female business owners may avoid the personal net worth requirement.**

In order to establish injury and causation for this claim, Plaintiffs' must plead that they will be injured because the MBE/WBE program allows minority or female business owners to avoid the personal net worth requirement.  Plaintiffs therefore must allege:  1) Some minority or female business owners have transferred assets into protected asset categories in order to lower their personal net worth below the personal net worth limit; 2) these business have thereby become certified as MBEs/WBEs or remained certified as MBEs/WBEs; 3) Plaintiffs are unable to compete on an equal basis with these businesses due to the special consideration granted by the MBE/WBE program, and 4) in the near future, Plaintiffs will bid on another city contract in which these businesses will receive special consideration.

Plaintiffs sufficiently pled injury and causation for this claim.  It is reasonable to infer— from Defendant Yelder's October 2, 2019 statement—that business owners have previously transferred assets to their businesses in order to meet the personal net worth requirement, and that businesses have become certified, or maintained certification, as a result.  Plaintiffs also allege facts showing they are ready and able to bid on City contracts but are unable to compete on an equal basis with these businesses.  *See* Compl. ¶¶ 9, 36, 37; *see also* Compl. ¶ 44.  Plaintiffs also allege facts showing that they will bid on another City contract in the future in which these allegedly wrongly certified businesses receive special consideration.  *See* Compl. ¶ 28.  Plaintiffs have sufficiently alleged an injury caused by the fact that the MBE/WBE program allows business

owners to transfer assets in order to avoid the personal net worth limitation. They have therefore shown standing for this claim sufficiently at this stage of the litigation.

**III.    Plaintiffs have adequately pled an injury in fact for their claim that Defendants' application of the business size requirements is unconstitutional.**

Finally, Defendants argument that Plaintiffs have not sufficiently pled facts to establish an injury-in-fact for their claim under Count Two is unavailing.

The requirements to plead an injury-in-fact are set forth above. By alleging facts that Plaintiffs are able and ready to bid on City contracts, but that a discriminatory policy prevents them from doing so on an equal basis, Plaintiffs have established a concrete and particularized injury. *See* Compl. ¶ 44 ("Plaintiffs are able and ready to bid on City Contracts for which the City Tax Increment Financing or Chapter 353 Redevelopment credits are involved"); ¶ 9 (alleging that the MBE/WBE program grants special consideration to businesses in the program); ¶ 43 ("Plaintiffs have been specifically injured in that they have been deprived of sales that would have resulted from an award of the contracts which were instead awarded to . . . MBE/WBE businesses which should not have benefited from the preferential treatment afforded by certification."); *see also* Compl. ¶ 44 (concluding that the MBE/WBE program does not allow Plaintiffs to compete for contracts on an equal basis).

Plaintiffs have also established an imminent injury because they allege that, in the near future, they will bid on another City contract in which these allegedly wrongly certified businesses receive special consideration. *See* Compl. ¶ 28.

Though Defendants argue these allegations are conclusory, they are general allegations of fact sufficient to survive a motion for judgment on the pleadings. *See Lujan*, 504 U.S. at 561 (stating that general factual allegations of the elements of standing suffice to establish standing at the pleading stage, because a court must presume "that general allegations embrace those specific

21

facts that are necessary to support the claim") (citations omitted).

<b>Conclusion</b>

Plaintiffs' claim under Count One that the MBE/WBE program is unconstitutional because the program provisions do not include a personal net worth requirement is DISMISSED AS MOOT. Defendant's motion for judgment on the pleadings on all remaining claims is DENIED.

**IT IS SO ORDERED.**

DATED:  March 10, 2021                            /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT